UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN C. TYRAKOWSKI, on behalf of
himself and all others similarly
situated,

        Plaintiff,

    v.

CONAGRA BRANDS, INC. PENSION PLAN
AND CONAGRA BRANDS EMPLOYEE
BENEFITS ADMINISTRATIVE COMMITTEE,

        Defendants.

No. 23 CV 894

Judge Georgia N. Alexakis

MEMORANDUM OPINION AND ORDER

Plaintiff Steven C. Tyrakowski brings a putative class action against defendant Conagra Brands, Inc. Pension Plan and defendant Conagra Brands Employee Benefits Administrative Committee, alleging various violations of the Employment Retirement and Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). [19]. Defendants have moved to dismiss the amended complaint in its entirety. [22]. For the reasons set forth below, the Court grants defendants' motion in part and denies it in part.

## I.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the

plaintiff's favor, but a court need not accept legal conclusions, or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009).

Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the proceeding." Fed. R. Civ. P. 10(c). In addition, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "[s]uch documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "[T]his is a narrow exception" to the general rule that when additional evidence is attached to a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 ... or exclude the documents attached ... and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Although narrow, this exception is "aimed at cases interpreting, for example, a contract." *Id.*

Here, plaintiff has attached to his amended complaint numerous documents, including two relevant pension plans. [19] at Exs. 1–10. Defendants do not dispute the authenticity of these documents. Rather, as the Court discusses below, both parties rely on the documents to advance competing interpretations of the two plans. Neither party—most significantly, plaintiff—argues that it would be inappropriate for the Court to interpret those plans at this stage of the litigation. *Compare with* [26] at 9 (plaintiff argues that it would be inappropriate for the Court to "dispose[] of"

2

Count II, in which plaintiff alleges a breach of fiduciary duty, because that issue is "inherently fact-based"). In resolving this motion, the Court therefore will interpret those plans, as the parties have invited it to do.

The interpretation of ERISA plans is governed by federal common law, "which draws on general principles of contract interpretation to the extent they are consistent with ERISA." *Cent. States, Se. & Sw. Areas Pension Fund v. Transervice Logistics, Inc.*, 56 F.4th 516, 524 (7th Cir. 2022). Under these principles, it is well-established that courts must begin with the language of the contract itself. *See, e.g., Emergency Med. Care, Inc. v. Marion Mem'l Hosp.,* 94 F.3d 1059, 1060–61 (7th Cir. 1996). If the language of the contract is unambiguous, a court's analysis ends with the contract language. *Id.* However, "[i]f the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a court cannot properly determine on a motion to dismiss." *See Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 526 (7th Cir. 2022) (cleaned up); *Charter Oak Fire Ins. Co. v. Wisconsin Elec. Power Co.*, 262 F. Supp. 3d 760, 768 (E.D. Wis. 2017) (defendant "can succeed on its motion to dismiss only if the cited portions of the contract unambiguously bar [the plaintiff's] claims"). In that scenario, the motion to dismiss must be denied.

## II.     Factual Background

The following facts are taken from plaintiff's amended complaint. Plaintiff is a former employee of the Beatrice Foods Company ("Beatrice"). [19] ¶ 30. While employed at Beatrice, plaintiff participated in the Beatrice Retirement Income Plan

("BRIP"), and his pension benefits vested in 1987. [19] ¶¶ 31–32. The next year, and well before he was even close to retirement age, plaintiff left Beatrice. *Id.* ¶ 33.

Under the BRIP, deferred vested pension participants, such as plaintiff, were entitled to a monthly benefit. [19] at Ex. 1, § 6. When precisely that benefit would begin, and the amount of that benefit, was up to the participant. The BRIP provided:

> *If the Participant so elects*, payments will commence as of the first day of the calendar month coincident with or next following the Participant's fifty-fifth (55th) birthday or of any calendar month thereafter prior to his Normal Retirement Date; provided, however, the amount of such deferred vested pension shall be reduced by .5% times the number of months between the Pension Commencement Date and the first day of the month coincident with or next following the Participant's sixtieth (60th birthday).

*Id.* (emphasis added).

For purposes of this case, the BRIP defined "Normal Retirement Date" as "a Participant's sixty-fifth (65th) birthday," and it defined the "Pension Commencement Date" as "the first day a pension is paid under the provisions of this Plan." *Id.* at § 1(q), (t). In other words, under the BRIP, a participant could elect to be paid benefits beginning as early as age 55, although the amount of those benefits would be reduced until age 60. The BRIP further provided that the participant's election "shall be made by an instrument in writing executed and delivered by the Participant to the Company" and that the election needed to be made "not less than thirty (30) days prior to the date [the participant] wishes his pension to commence." *Id.* at Ex. 1, § 6.

Some (but not all) of this information was explained to plaintiff in a "deferred vested statement" he received in 1989 from Beatrice's pension administrator. *Id.* at Ex. 6; *id.* ¶ 23. In relevant part, the statement read:

4

> You are eligible to begin receiving payment of your benefit anytime after
> you reach age 55. Between the ages of 55 and 60 it will be reduced for
> early retirement. At age 60 or older, you will be eligible for an unreduced
> benefit. You must commence receiving payment of your benefit no later
> than age 65.

*Id.* at Ex. 6.

In 1990, Beatrice was purchased by Conagra Brands, Inc. *Id.* ¶¶ 8–9. With that acquisition, the BRIP merged into the Conagra Foods, Inc. Pension Plan for Salaried Employees, which was later renamed the Conagra Foods, Inc. Pension Plan ("Conagra Plan"), and the latter plan assumed the liabilities of the former. *Id.* ¶¶ 15–16; *id.* at Ex. 3, Supplement 24. The BRIP and the Conagra Plan were similar in significant respects. Under the Conagra Plan, a deferred vested pension participant, such as plaintiff, was:

> entitled to receive a monthly benefit commencing as of his Early
> Retirement Date equal to the … sum of the benefit described in Section
> 3.01(b)(i) reduced … by ½ of 1% for each complete calendar month by
> which his Early Retirement Date precedes the first day of the month
> coincident with or next following his 60th birthday.

*Id.* at Ex. 3, Supplement 24, § 3.05(b)(ii). The Conagra Plan defined "Early Retirement Date" to be age 55. *Id.* at Ex. 3, Supplement 24, § 1.12. And the reference in the block quotation above to "the benefit described in Section 3.01(b)(1)" was a reference to "the Participant's accrued monthly normal retirement benefit," meaning the benefit to which the participant would be entitled at a "Normal Retirement Age," which under the Conagra Plan was age 65. *Id.* at Ex. 3, § 1.19; *id.* at Ex. 3, Supplement 24, § 3.01(b)(1). In other words, like the BRIP, the Conagra Plan

5

permitted plaintiff to receive reduced benefits beginning at age 55, or unreduced benefits beginning at age 60.

In addition, like the BRIP, the Conagra Plan required participants to elect affirmatively to receive benefits before their 65th birthday. *Id.* at Ex. 3, § 4.07 ("*Unless a Participant elects otherwise … any* payment of benefits shall begin not later than 60 days after the close of the Plan Year in which occurs the later of the Participant's: (i) Normal Retirement Age; or (ii) termination of employment.") (emphases added); *id.* ("[A] Participant's benefit will not commence before the Participant's attainment of Normal Retirement *without the Participant's consent ….*") (emphasis added).

The Conagra Plan also expressly prohibited the retroactive payment of benefits, except in narrow circumstances and, even then, not of "lump sums." The Conagra Plan provided:

> Payments shall commence as of a Participant's Annuity Starting Date, provided that this contemplates retroactive payments … when payments actually commence after the Participant's Annuity Starting Date. Such a retroactive Annuity Starting Date must be elected by the Participant, but *generally shall only be allowed to adjust for administrative delay and shall not be allowed for lump sum payments ….*

*Id.* (emphasis added).

In the months leading up to his 65th birthday, plaintiff inquired about his retirement benefits under the Conagra Plan. *Id.* ¶ 37. In response, plaintiff received paperwork regarding "a normal retirement benefit that would commence at age 65." *Id.* ¶ 38. Plaintiff then contacted the pension service center and asked whether, as he

6

believed to be the case, he was entitled to receive benefits dating back to his 60th birthday. *Id.* ¶ 39. At that point, plaintiff was told that "he could not start his benefit until age 65, that he was not entitled to a retroactive benefit to age 60, and that there would be no upward adjustment in the amount of his pension going forward to compensate him for the benefits that were payable starting at age 60 but had not been paid." *Id.*

In April 2022, plaintiff appealed this determination. *Id.* ¶ 40; *id.* at Ex. 9. In his appeal, plaintiff wrote:

> I am appealing my pension calculation. I have been relying on your MyPlansConnect.com web site that my pension was supposed to start at age 65 and after I requested the package from the service center in February 2022 I found a copy of the attached deferred vested statement that I received from Beatrice Company after I left which clearly says that I was eligible for full unreduced benefits at age 60 or reduced benefits at age 55.
>
> Your website would not allow me to set a Benefit Commencement Date for my pension earlier than May 1, 2022 following my 65th birthday. I sent a copy of that statement from Beatrice to the pension service center but they continue to claim that I am not eligible until age 65 and they are offering me the same monthly amount at age 65 that Beatrice said I should have been receiving at age 60.
>
> ….
>
> I should not be penalized for not requesting the pension package sooner because your web site gave me faulty information about when I was eligible. My preference would be to have my payments start retroactively as of May 1, 2017, but if that is not possible, then the actuarial value of that annuity at age 60 needs to be recalculated for an annuity starting at age 65. Please provide me with a revised package that provides the retroactive payments or the recalculated higher monthly payment.

*Id.* at Ex. 9.

Three months later, in July 2022, defendants denied plaintiff's claim. *Id.*; *id.* ¶ 43. In doing so, defendants recognized that "between 5/1/2017 and 5/1/2022" (i.e., between plaintiff's 60th and 65th birthdays), he had been entitled to a monthly pension benefit of approximately $300 (for a five-year total of approximately $18,000). *Id.* at Ex. 9. Defendants' letter further stated that plaintiff had been "free to contact the Pension Service Center at any time to elect to commence [his] benefit"; that "[p]er the Plan terms, the normal retirement age is 65 and [plaintiff was] contacted at that time per Plan rules"; and that defendants had "no records of you contacting the Conagra Pension Service Center prior to February 2022 to inquire about your benefit." *Id.*

In August and October 2022, plaintiff asked for a copy of the BRIP and other related documents. *Id.* ¶¶ 46–47. In November 2022, defendants responded via letter that they were "unable to locate copies of the [BRIP] prior to its merger into the [Conagra Plan]." *Id.* ¶ 48; *see also id.* at Ex. 10. The response continued: "Per the plan merger, the BRIP was merged with and into the Conagra Pension Plan and the BRIP ceased to exist as of January 1, 1993." *Id.* at Ex. 10. In March 2023, after plaintiff filed this lawsuit, defendants located a copy of the BRIP and provided it to plaintiff. *Id.* ¶ 49.

## III.   Analysis

### A.   Violation of ERISA's Anti-Cutback Provision (Count I)

Count I of plaintiff's complaint alleges violations of ERISA's anti-cutback rule, which "prohibits any amendment of a pension plan that would reduce a participant's

'accrued benefit.'" *See Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004) (citing 29 U.S.C. § 1054(g)). Here, plaintiff argues that the Conagra Plan violated the anti-cutback rule because, unlike the BRIP, the Conagra Plan prohibited "retroactive payments or retroactive annuity starting dates for benefit calculations for deferred vested participants." [19] ¶ 64.

Defendants argue that plaintiff's anti-cutback claim should be dismissed outright because he did not raise this claim with the Conagra Brands Employee Benefits Administrative Committee and thus failed to exhaust his administrative remedies, as required. [23] at 5-6; [27] at 2-5. In response, plaintiff argues that he did exhaust his cutback claim and, in any event, exhaustion was not required in his circumstances. [26] at 3-5.

Whether exhaustion was required strikes this Court as beside the point. The plain language of plaintiff's appeal contains the crux of his anti-cutback claim. After referencing the deferred vested statement he received from Beatrice's pension administrator in 1989, plaintiff wrote that "the pension service center … continue[s] to claim that I am not eligible until age 65 and *they are offering me the same monthly amount at age 65 that Beatrice said I should have been receiving at age 60*." [19] at Ex. 9 (emphasis added). Plaintiff added: "*Please provide me with a revised package that provides the retroactive payments* or the recalculated higher monthly payment. *Id.* (emphasis added). Fairly construed, plaintiff's appeal made the following points: (1) under the BRIP, he was entitled to receive unreduced benefits at age 60; and (2) plaintiff was now being told that those benefits were not available to him. The Court

9

thus disagrees with defendants' assertion that "[n]othing in Plaintiff's administrative claim … even remotely suggests that the Conagra Plan was amended to deprive him of benefits to which he was entitled under the BRIP." [27] at 3.

To be sure, plaintiff did not use words like "anti-cutback," "cut back," or "amendment" in his administrative appeal. But defendants have cited no cases requiring such legal precision. Instead, the cases upon which defendants rely recognize that an administrative claim need only "be reasonably calculated to alert the employer to the nature of the claim and request administrative review," *see Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 827 (7th Cir. 1991), and that the application of the administrative exhaustion requirement in an ERISA case is "a matter within the discretion of the trial court," *id.* at 825. In *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649 (7th Cir. 1996), the Seventh Circuit concluded that plaintiff failed to exhaust her administrative remedies in an ERISA action, but there, plaintiff's administrative claim "state[d] only her belief that she was entitled to severance pay" and made "no mention of [defendant] wrongfully discharging her or interfering with her short-term benefits." Here, the gulf between plaintiff's administrative appeal and Count I of the operative complaint is not nearly as wide.

The Court thus moves to the merits of plaintiff's anti-cutback claim. The parties dispute whether the pension administrator's decision to deny plaintiff benefits should be reviewed *de novo* or under a more generous (to the administrator) standard of "arbitrary and capricious." [23] at 6-7; [26] at 5; [27] at 8-10. Assuming

without deciding that *de novo* review applies, the Court still finds that plaintiff's anti-cutback claim lacks merit.

Defendants do not dispute that under the BRIP, plaintiff was entitled to unreduced pension benefits at age 60. [23] at 7. And plaintiff does not dispute that he had to affirmatively elect to receive early-retirement benefits; they would not just appear in his bank account automatically.[1] There is also no dispute among the parties that the Conagra Plan prohibits retroactive payments except in limited circumstances (e.g., administrative delay) not applicable here. [19] at Ex. 3, § 4.07. The parties' anti-cutback dispute is therefore limited to the following question: whether the BRIP permitted early-retirement benefits to be paid retroactively. After closely reviewing the language of the BRIP, the Court concludes that it did not and that plaintiff's anti-cutback claim therefore fails.

As noted earlier, the interpretation of ERISA plans is governed by federal common-law principles of contract interpretation, and courts must begin with the language of the contract itself. *See Cent. States, Se. & Sw. Areas Pension Fund*, 56 F.4th at 524; *Hammond v. Fid. & Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir. 1992). Here, the BRIP's language clearly requires that a participant wishing to commence retirement benefits before age 65 elect to do so "in writing … not less than thirty (30) days *prior to* the date he wishes his pension to commence." [19] at Ex. 1, § 6 (emphasis added). This requirement can fairly be read as a prohibition on

---

[1] *See* [26] at 7 ("[U]nder the BRIP, there is no deadline for *electing* an early retirement benefit and no prohibition on retroactive payments. The BRIP only requires that *the participant elect* any early retirement benefit; there is no deadline for *that election*.") (emphases added).

11

retroactive payments. As defendants write: "[I]f the BRIP requires Plaintiff to affirmatively elect, in writing, to commence his benefits at least 30 days *before* payments can commence, the BRIP undoubtedly does not permit retroactive payments." [23] at 9 (emphasis in original).

Plaintiff's contrary reading of the BRIP—as permitting the retroactive payment of early-retirement benefits—"violate[s] the settled principle that courts should not 'interpret contracts in a manner that would render specific contractual language mere surplusage.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Standard Elec. Co.*, 87 F. Supp. 3d 810, 816 (N.D. Ill. 2015) (quoting *Thompson v. Amoco Oil Co.,* 903 F.2d 1118, 1121 (7th Cir.1990)). *See also Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) (when interpreting plans covered under ERISA, courts read the plan "as a whole, considering separate provisions in light of one another and in the context of the entire agreement"); *Harris v. The Epoch Grp., L.C.,* 357 F.3d 822, 825 (8th Cir. 2004) (in interpreting an ERISA plan, observing that "under federal common law a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous") (cleaned up). If the BRIP were interpreted to permit retroactive payments, its requirement that participants give advance notice of their decision to collect early-retirement benefits would be inessential. Plaintiff gives that language no other import under his reading of the BRIP.

12

Next, plaintiff tries to support his reading of the BRIP by pointing to language in Sections 4 and 8.3(g) of the plan. [26] at 7. Those sections, however, pertain to a plan participant who is "eligible to receive an early retirement pension" because "his employment … is severed after he has attained age fifty-five (55) and has an aggregate of five (5) or more years of Vesting Service." *See* [19] at Ex. 1, § 4; *id.* at Ex. 1, § 8.3(g) ("In the case of a Participant who elects an early retirement pension under Section 4 ….") Plaintiff is not such a participant. He left Beatrice well before he turned 55. *Id.* ¶ 33. Thus, even assuming plan participants covered by Sections 4 and 8.3(g) were able to receive retroactive payments under the BRIP, that says nothing about plaintiff's ability to do so.

Finally, plaintiff emphasizes that, unlike the Conagra Plan, the BRIP contains no express prohibition on retroactive payments. [26] at 6 ("The 1987 BRIP unambiguously contains no restrictions on retroactive payments."); *id.* at 8 ("[W]hile Defendants argue that to get the age 60 benefit Plaintiff had to elect it age 60 … they have cited no BRIP provision in support for the simple reason that it does not exist."). In other words, plaintiff asks the Court to conclude that the BRIP implicitly permitted what it did not explicitly forbid. But "ERISA instructs courts to enforce the terms of an ERISA plan strictly." *See Griffin v. Seven Corners, Inc.*, No. 21-2332, 2021 WL 6102167, at *2 (7th Cir. Dec. 22, 2021). And in so doing, courts must consider a plan's "express terms." *See Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 633 (7th Cir. 2001). Aided by these guideposts, the Court disagrees with plaintiff's characterization of the BRIP as silent on the issue of retroactive payments.

13

As already discussed, the BRIP's express terms require notice before early-retirement benefits can be paid; that explicit requirement effectively bars retroactive payments. Moreover, even if the BRIP could be read as being wholly silent on the topic of retroactive payments, that silence would not give rise to ambiguity about the BRIP's stance on retroactivity. In *Senn v. United Dominion Indus., Inc.*, the Seventh Circuit declined to interpret a plan as permitting vestment of a lifetime right to benefits, or even as being ambiguous on that point, where the contractual documents were "either silent on the question of whether a right to lifetime benefits should vest or appear[ed] to explicitly prohibit such vesting." 951 F.2d 806, 816 (7th Cir. 1992). *See also Schulist v. Blue Cross of Iowa*, 553 F. Supp. 248, 254–55 (N.D. Ill. 1982), *aff'd* 717 F.2d 1127 (7th Cir. 1983) ("The silence of the contract with regard to any premium surplus does not constitute an ambiguity, but rather, indicates that the parties agreed to no refunds."). Here, too, any silence from the BRIP on the topic of retroactivity—coupled with the BRIP's express requirement that a deferred vested participant give advance notice of his decision to collect early-retirement benefits—demonstrates unambiguously that the BRIP did not permit retroactive payment of those benefits.

For these reasons, the Conagra Plan cannot be read as cutting back on the early-retirement benefits available to plaintiff under the BRIP. Plaintiff's Count I is therefore dismissed.[2]

### B. Breach of Fiduciary Duty Under ERISA (Count II)

As an alternative to Count I, plaintiff argues that defendants breached their fiduciary duties in violation of ERISA, 29 U.S.C. § 1104, by failing to notify plaintiff that he would lose any pre-age-65 pension benefits that he did not elect to receive through affirmative, prior notice. [19] ¶¶ 70–73. To prove a breach of fiduciary duty, plaintiff must show (1) defendant is a fiduciary, (2) defendant breached its fiduciary duty, and (3) the breach resulted in harm. *See Killian v. Concert Health Plan*, 742 F.3d 651, 658 (7th Cir. 2013). Defendants contest whether plaintiff has sufficiently alleged elements two and three.

With respect to the second element, defendants accurately assert that ERISA imposes a duty on fiduciaries "not to mislead a plan participant or to misrepresent the terms or administration of an employee benefit plan." *See Kenseth v. Dean Health*

---

[2] Count I also alleges that defendants violated ERISA's "anti-alienation" and "non-forfeiture" provisions. [19] ¶ 66. Under the statute's anti-alienation provision, plan assets cannot be seized to satisfy judgments, *see Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 371–72 (1990), and under its non-forfeiture provision, a plan must "provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age," *see Honeysett v. Allstate Insurance Co.*, 570 F. Supp. 994, 1002 (N.D. Ill. 2008). With respect to the anti-alienation provision, as defendants point out, plaintiff's amended complaint is "devoid of allegations claiming the Conagra Plan pledged Plaintiff's benefits as security for a debt," [23] at 9, n.3, and plaintiff does not rebut this point in their response to defendant's motion, *see generally* [26]. Neither party addresses the merits of plaintiff's alleged violation of ERISA's non-forfeiture provision. But on its face, plaintiff's complaint makes no allegation as to how the Conagra Plan infringes on his right to recover his normal retirement benefit upon the attainment of his normal retirement age. The Court therefore dismisses these two aspects of Count I as well.

*Plan*, 610 F.3d 452, 466 (7th Cir. 2010). Yet based on plaintiff's allegations, that is exactly what defendants did.

As the Court has explained, under the BRIP's unambiguous language, plaintiff was required to elect affirmatively to receive benefits before age 65 and to make that election before he could receive those benefits. A failure to do so would result in forfeiture of early-retirement benefits. In his complaint, plaintiff alleges that defendants sent him at least one document, the language of which undercuts these BRIP terms. In particular, plaintiff alleges that in 1989, he received the deferred vested statement from BRIP's pension administrator telling him (1) he was "eligible to begin receiving payment of [his] benefit anytime after [he reached] age 55"; (2) "[b]etween the ages of 55 and 60 it will be reduced for early retirement"; and (3) "[a]t age 60 or older, [plaintiff] will be eligible for an unreduced benefit." [19] at Ex. 6; *id.* ¶ 23. The notice continued: "You must commence receiving payment of your benefit no later than age 65." *Id.* The notice did not tell plaintiff he had to elect affirmatively to receive any benefits before age 65. And the notice did not explain that plaintiff's failure to make an affirmative election before age 65 would result in forfeited benefits. Indeed, according to plaintiff, it was not until July 2022 that he learned of BRIP's bar on retroactive payments. *Id.* ¶¶ 36, 51.

Certainly, the BRIP itself contained this prohibition. But the 1989 statement did not refer plaintiff to the BRIP. *Contra Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 637 (7th Cir. 2007) (concluding that defendants made no misrepresentations in estimate statements that "contained disclaimers that expressly stated that, in the

16

event of a conflict, the written terms of the Retirement Plan would govern"). Even if it had, after accepting the complaint's allegations as true and drawing all reasonable inferences in the plaintiff's favor, *see Iqbal*, 556 U.S. at 667, nothing indicates that plaintiff had a copy of the BRIP until after he turned 65. In August 2022, he asked defendants to send him a copy of the BRIP, and defendants fulfilled that request seven months later. [19] ¶¶ 46, 49. Presumably, the Conagra Plan also could have alerted plaintiff to the bar on retroactive payments. But plaintiff has alleged that he did not possess that document either. [26] at 10 (citing [19] ¶¶ 36, 51).

Critically, defendants have chosen to rely—quite heavily—on the 1989 statement to argue that plaintiff has failed to allege both that defendants breached their fiduciary duties and that plaintiff was harmed by this breach. According to defendants, that 1989 document unmistakably informed plaintiff "of his right to collect unreduced benefits" at age 60, and no additional communication from a plan administrator was needed where defendant "retained a copy of that notice for over 30 years." [27] at 12; *see also* [23] at 12 (arguing that the 1989 statement was "the very notice" plaintiff needed). Defendants' position is disingenuous. In advocating for Count I's dismissal, defendants argued vigorously that a critical feature of the BRIP, at least with respect to deferred vested participants such as plaintiff, was its bar on the retroactive payment of pre-age-65 benefits. Having staked out that position, defendants cannot credibly maintain that the 1989 statement—which made no mention of the bar on retroactive payments—accurately apprised plaintiff of the materials terms of the BRIP. *See Kenseth*, 610 F.3d at 471 ("The most important way

17

in which a fiduciary complies with its [disclosure obligations] is to provide accurate and *complete* written explanations of the benefits available to plan participants.") (emphasis added); *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 817 (7th Cir. 1997) (affirming denial of breach of fiduciary duty claim, but noting that such claims can proceed "when a fiduciary fails to give a beneficiary material information regarding a plan and the fiduciary's silence is misleading").

Defendants likewise cannot credibly maintain that because plaintiff admits he received (incomplete) notice in 1989, he has failed to adequately allege harm. Where that statement failed to inform plaintiff that he would lose whatever benefits he did not elect to collect before turning 65, and where plaintiff has more than plausibly alleged that he would have elected to receive benefits before turning 65 if he knew that he would otherwise lose those benefits, *see* [19] ¶ 80, plaintiff has sufficiently claimed that he was harmed by defendants' breach of their fiduciary duties.

Count II thus survives defendants' motion to dismiss.

### C.    Failure To Provide and Maintain Plan Documents (Count III)

In Count III, plaintiff claims that because the Conagra EBAC failed to produce a copy of the BRIP promptly, the EBAC violated various ERISA provisions, making plaintiff eligible for various forms of relief. Here, plaintiff has failed to state a claim.

As discussed above, the Conagra Plan encompassed the relevant BRIP requirements and superseded the BRIP. [19] ¶¶ 15–16. Defendants were not required to provide plaintiff with "outdated" documents "which merely would have furnished [him] with duplicative information." *See Hakim v. Accenture United States Pension*

*Plan*, 656 F. Supp. 2d 801, 825 (N.D. Ill. 2009); *see also Hartman v. Dana Holding Corp.*, 978 F. Supp. 2d 957, 968 (N.D. Ind. 2013) ("[O]utdated documents are generally not required to be provided because they normally are not necessary to determine one's rights under the current plan.").

Count III is therefore dismissed.

## IV. Conclusion

For these reasons, the Court grants defendants' motion to dismiss in part and denies it in part. [22]. Count I and Count III are dismissed with prejudice. On or before November 19, 2024, defendants are directed to answer the surviving portion of plaintiff's amended complaint. On or before December 3, 2024, the parties are directed to submit a joint proposed plan for fact discovery. In light of this memorandum opinion and order, plaintiff's motion to lift the stay on discovery pending resolution of defendants' motion to dismiss [34] is denied as moot.

ENTERED: 10/18/24

_____

Georgia N. Alexakis
United States District Judge